DeadeRICK, Ch. J.,
delivered tbe opinion of tbe court:
Tbe complainants in tbe original bill are the widow and heirs at law of W. E. Jones, deceased, and file their bill in tbe chancery court, at Memphis, asserting their title to> and to stay waste upon, a tract of 640 acres of land in Shelby county.
It appears that W. E. Jones purchased at a sale, under proceedings by the chancery court at Nashville, on an execution issued therefrom, the tract of land in question, in 1865, in the suit of the Ohio Life Insurance and Trust Company v. Daniel B. Turner, the then owner of the land; that he took a deed from the sheriff for said tract of land, and entered upon the possession thereof some time during the year 1865. It further appears that in June, 1866, Townsend obtained a judgment against Jones, in the circuit court of Shelby county, for about $1,200, and that execution thereon was issued and levied upon said tract of land as the property of said Jones, and was sold on the 12th of September, 1866, Townsend becoming the purchaser, at $1,242.91. He obtained a deed from the sheriff. The time allowed by law for redemption having expired, and Jones having died after the sale and before the time of redemption expired, and no one offering to redeem, Townsend entered into possession of part of the land. After *169 the purchase by Townsend, dower was assigned to Annie L., the widow of said W. E. Jones, and Townsend, since the filing of the original bill, bought her dower interest in the land. The original bill sought to set aside the purchase by Townsend, upon the ground alleged — that the sheriff had not given J ones the twenty days’ notice required by law. The amended bill, insisting upon this ground, assigns and charges several other reasons why the sale to Townsend is invalid, and should be set aside:
1. Because, on the 20th of November, 1865, ¥m. E. Jones conveyed to Vm. H. Stovall, 100 acres of said tract, in trust, to secure "Wright & McKissick against a certain liability they had assumed for him, and this 100 acres was not conveyed to Jones until the 2d of October, 1866, and after the sale to Townsend, and it is insisted that this 100 acres could not be levied upon or sold by execution.
2. It is charged that, although the sale of said land by the Ohio Life Insurance and Trust Company, in the suit against Daniel B. Turner, was regular and in due form, yet the said Win. E. Jones, the purchaser, acquired only the equitable title in fee simple to the said land, and that the sheriff’s deed therefor does not convey the legal title, because said deed describes the judgment and execution as being against David B. Turner instead of Daniel B. Turner, the true name of the defendant therein; that, although the judgment was rendered and the execution issued against said Turner by his true name, Daniel B., yet, by mistake or other cause, the sheriff’s deed describes the execution and judgment as against David B. Turner.
3. It is further charged that the suit and judgment against Jones, in favor of D. II. Townsend, were prosecuted and rendered in his true name, but that the execution, not pursuing the judgment, was issued in the name of D. E. Townsend.
4. It is further charged that the sale was void because the land was divided by natural and artificial lines into several distinct lots, any one of which was of value suffi *170 cient to more than satisfy the judgment in favor of defendant, and that the whole tract was worth $65,000, and that it was the duty of the sheriff to' sell no more than was sufficient to satisfy the debt and costs, amounting to about $1,242.
His honor, the special chancellor, decreed that complainants were entitled to be relieved of the great hardship of losing the tract of land, worth from $30,000 to $50,000, for the grossly inadequate sum of $1,242.97, bid for it by Townsend, the purchaser, and that it was naturally susceptible of division and should have been divided. But the chancellor was of opinion, and so decreed, that Townsend was entitled to his dobt, interest, and costs, and to have the same declared a lien upon the land, and that complainant should tender the same in court, and allowed them thirty days within which to file an amended bill to bring the money due said Townsend into court, and that upon filing said amended bill, and making said tender, complainant’s right to redeem shall become fixed, and their right to said land established. If the complainants should not elect to amend their bill and tender the money into court within thirty days from the date of the decree, then the chancellor directed that the bill and cross-bill stand dismissed, without prejudice to either party, each party paying his own costs. This decree was rendered on the 18th of July, 1871, and no appeal was prosecuted therefrom, and on the 14th of August, 1871, complainants filed their amended bill, averring that they had made a tender of the amount due, personally, to Townsend, and that he had refused to accept it, and bringing the money into court. Townsend answered the amended bill on the 18th of November, 1871, raising some questions as to the regularity and sufficiency of the alleged tender, and charging a champertous arrangement or contract by complainants with others. Upon these issues depositions were taken, and on the 5th of March, 1872, a final decree was rendered, adjudging that the tender had been made to Townsend of the money due him, *171 and bad been brought into court for his benefit, and that complainants were entitled to be invested with the title to said land, and to writs of possession thereof, except the dower tract, and decreed accordingly, and directed an account for waste and permanent improvements, etc., and defendant, Townsend, appealed to this court.
The deposition of the deputy sheriff who made the sale to Townsend, is taken, and satisfactorily establishes that the twenty days’ notice, required by statute, was given by him, personally, to Jones.
The conveyance of 100 acres in trust to Stovall, made on the 20th of November, 1865, was made to indemnify Wright & McKissick against liability,, as acceptors of an accommodation bill drawn on them by Jones, at ninety days. The bill was not presented-or protested at- maturity, and the trust deed stipulates that Wright & McKissick should select out of the 640 acres, from any portion thereof, qxeept the houses and cleared land, 100 acres, and have, the same surveyed, and a plat thereof, with the metes and bounds, furnished to the said Win. IT. Stovall, and when said 100 acres are so selected, ascertained, and set apart, the said Wm. IT. Stovall shall hold to him and his heirs, etc., and provides that upon paying said bill and saving his acceptors harmless, the deed shall be null and void. No survey wras made or metes or bounds furnished the trustee, nor did the beneficiaries ever select any 100 acres out of the 640 acres, and it cannot be said that any particular 100 acres ever vested in the trastee; on the contrary, by the terms of the deed, the trustee was to hold to him and his heirs only when the 100 acres was selected, surveyed, set apart, etc., and until that was done the effect of the deed was simply to confer on the trustee the power to hold, etc., when the selection, etc., was made.
The objections taken that the mistake in the Christian name of Turner, in the recital of the sheriff’s deed to Jones, and the mistake in the initial letter of the middle name of Townsend, in the execution issued on his judgment, are of *172 such character as to prevent Townsend from acquiring the legal title -by his purchase and sheriff’s deed, are not tenable. It is distinctly charged in the original bill, filed by complainants on behalf of themselves and the creditors of the estate of said ¥m. E. Jones, that said ¥m. E. Jones was, at the time of his death, the owner of said tract of 640 acres, and died seized thereof, and that said ¥m. E. Jones, at the date of Townsend’s judgment, the issuance and levy of the execution thereunder, was in the actual possession and occupation of said land, and that the officer did not advertise and give the twenty days’ notice required by law. In their amended bill, the complainants, in disparagement of their own title, as set up and claimed in the original bill, seek to avoid the effect of the levy on and sale of the land, and'insist that, although the sale of the land and purchase by said "Win. E. Jones was all regular, yet, because of the mis-recital of Turner’s Christian name in the sheriff’s deed to Jones, he did not acquire the legal title theretq, but only an equitable title, not subject to sale upon an execution at law. Upon tire record, we are by no means satisfied that any such mis-recital occurred in the deed executed by the sheriff; on the contrary, we are inclined to the opinion that it did not, but that the substitution of the name David for that of Daniel, occurred by clerical mistake in the registration of the deed. The difference in the appearance of the two names, when hastily or indistinctly written, is so small that such a mistake might easily be made by a copyist. A similar objection is made to the execution issued upon Townsend’s judgment against Jones. This execution conforms, in all respects, to the judgment in favor of D. II. Townsend and the execution is in favor of of D. E. Townsend. There is no doubt that this execution issued upon a judgment regular in all respects, and conforms to it in all essential particulars, and the variance in the initial letter of the middle name is not so material as to render the sale under it void. The special chancellor held in conformity to this opinion upon the several questions *173 hereinbefore discussed, and we are of opinion that his holding was correct. But the chancellor further held that the land, being susceptible, by well-defined natural and artificial boundaries, of division, that it was the duty of the sheriff to have sold it in lots, as so divided, and that complainants were entitled to be relieved of the great hardship of losing the land, worth $30,000 to $50,000, for the grossly inadequate sum of $1,242.97, bid for it by Townsend. Bronx said holding, notwithstanding the apparent hardship of the case, we feel constrained to differ. The case of Tiernan v. Wilson, 6 John. Oh. 17., 411, is cited and relied upon as sustaining the holding of the chancellor. In that case, the sheriff sold together two distinct lots, upon an execution for $10.25, for $13. The lote were worth $780. The sale was set aside as fraudulent and void., In the opinion of the learned chancellor, it is said: “The proposition is not to be disputed, that a sheriff ought not to sell, at one time, more of the defendant’s property than a sound judgment would dictate to be sufficient to satisfy the demand, provided the part selected can be conveniently and reasonably detached from the residue of the property and sold separately.” Whether the proposition was laid down in view of any statutory provision does not appear from the opinion. But in view' of the provisions of our statutes, we are of opinion that the rule can have no application in Tennessee, so far as it is understood as requiring the sheriff to sepai’ate for sale, a portion of an entire tract. This court has held that it is a fraud upon the right of redemption to sell together two or more distinct lots of land, and that such sale is void. 0 Cold., 328. But Code, secs. 2154 and 3043, gives the right to the defendant in the execution, to divide his tract of land at any time before 10 o’clock a.m., of the day of sale, by delivering a. plan of such division, subscribed by him, and in such case it is the duty of the sheriff to sell according to such plan. If no such plan is furnished, it is the duty of the sheriff to sell wiihout division. He has no right, much less is it his *174 duty, to divide the lands, no matter Avhat the amount of the debt or the value of the land levied upon. The debtor’s security against, the sacrifice of his property depends upon his vigilance in availing himself of his right of redemption, which the law gives him for the period of two years after the execution sale.
It is further insisted that Townsend, having failed to prosecute his appeal when the decree of July 18th, 1871, was pronounced, cannot, upon his appeal in March, 1872, now inquire into the questions determined by the decree of July 18th, 1871. While we hold that the defendant, Townsend, might, by leave of the court, have appealed from that decree, he ivas not bound to do* so1. That decree had directed that if certain things were not done within thirty days, by complainants, their bill should be dismissed, and the defendant might wait and see, and contest the fact of performance of the acts required to be done. The decree of 1871 did declare complainants’ right to redeem and adjudge the costs of the cause, but the decree of the March term, 1872, divested and vested title, and determined, finally, the respective rights of the parties, and was the last, the final, decree in the cause, from which either party had the right to appeal, and the appeal by Townsend brought the whole case, and all the questions involved in it, to this court for revision. The chancellor’s decree, giving complainants the right to redeem, must be reversed, and complainants’ bill dismissed, with costs.